Daniel, J.
The first question refers to a state of the facts which were proved before the jury upon the trial, and *610 upon which the verdict was rendered; and makes it necessary for this court to examine the facts and the circumstances of the case, to ascertain what offence the prisoner had committed, and what degree of criminality marked the offence. That the prisoner committed the homicide charged in the indictment, there can be no doubt. Was it committed under circumstances, which, according to law, made it manslaughter ? murder in the second degree ? or murder in the first degree ?
That the offence proved is greater than manslaughter, the prisoner’s counsel does not deny; but he contends, that, though it be murder, it is not murder in the first degree.
To determine whether it be murder in the first or second degree, it is necessary to refer to and consider the provisions of the statute, by which the distinction between the first and second degree of murder is created. The statute declares, “ that all murder which shall be perpetrated by means of poison—or by lying in wait—or by duress of imprisonment or confinement—or by starving—or by malicious, wilful and excessive whipping, beating or other cruel torture—or by any other hind of wilful, deliberate or premeditated killing —or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall henceforth be deemed murder in the first degree. And all other kinds of murder shall be deemed murder in the second degree.”
The counsel for the prisoner has supposed, and argued with great ability and ingenuity (as he always does) in support of his supposition, that the words “ any other kind of wilful, deliberate or premeditated killing,” ought to be construed, and of necessity, as referring to the character or kind of killing or murder specified in the previous enumeration (by means of poison, lying in wait, duress of imprisonment or confinement, starving, wilful, malicious, or excessive whipping, beating or other cruel torture) as if it read, “ any other kind of such wilful, deliberate or premeditated killing;” because, otherwise, as he supposes, the preceding *611 particular enumeration would be useless. Now, a plain and invincible answer to this argument, is presented in the import of the terms used; other and such. Other hilling, means any other whatever, which is different from the same; such hilling would refer to the modes of killing enumerated, and confine itself to the kind of killing enumerated and the means by which it was effected. To admit this construction of the prisoner’s counsel, would be to allow that the legislature meant nothing, or did not understand what it meant, when it used, upon this very important subject of life and death, those words of plain and obvious import; “ any other kind of wilful, deliberate and premeditated killing.” This is what this court cannot admit. Poison may reach the life of one or more not within the design of him who lays the bait; lying in wait, may be with a view to great injury, abuse and bodily harm, without the settled purpose to kill; imprisonment or confinement or starving, may be with a view to reduce the victim to the necessity of yielding to some proposed conditions, as well as a punishment for the failure of prompt obedience, without any certain and fixed determination to destroy life; and the same may be said of malicious or excessive whipping, beating or other cruel torture. In all these enumerated cases, the legislature has declared the law, that the perpetrator shall be held guilty of murder in the first degree, without further proof that the death was the ultimate result, which the will, deliberation and premeditation of the party accused sought. And the same authority has declared the law, that any other kind of killing, which is sought by the will, deliberation and premeditation of the party accused, shall also be murder in the first degree; but that as to this other kind of killing, proof must be adduced to satisfy the mind, that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation, of the party accused, sought. But to this general rule the same authority adds an exception, which is, that any death consequent upon the perpetration or attempt to perpetrate any arson, rape, *612 robbery, or burglary, shall be deemed murder in the first degree: and all other murder at common law, shall be deemed murder in the second degree. So that the cases . , . within the exception, as now put, and the cases enumerated as first mentioned, are, in fact, placed upon the same principle : there is no necessity of proof in either, to establish the fact that a homicide was intended. And it follows, of course, that all other homicide which was murder at common law, is now murder in the second degree, except when it shall be proved, that the homicide was the result of a “wilful, deliberate and premeditated killing;” and it also follows, of necessity, that, when by the proof the mind is satisfied that the killing was wilful, deliberate and premeditated, such killing must be taken and held to be murder in the first degree. This construction of the act of assembly is consistent with, and supported by the decisions of this court, in Burgess’s case, 2 Virg. Ca. 483. and Whiteford’s case, 6 Rand. 721.
According to the above construction of the statute, it remains to be determined, whether, upon the proof disclosed by the record, the prisoner is guilty of a “ wilful, deliberate and premeditated killing.” The court does not think it necessary, in this case, to enter into a definition or description of the various operations of the mind in relation to any'act, whereby such act should be regarded as wilful, deliberate and premeditated; but, approving the opinion heretofore indicated by this court in relation to this subject, in the cases above referred to, and considering the circumstances of this case, we feel no difficulty in determining, unanimously, that the jury was well justified in finding, that the killing, in this instance, was wilful, deliberate and premeditated. The prisoner, although excited by strong drink, and by an insult offered to a woman, which he thought himself bound to resent, and by a severe blow on himself, for which he had a right to redress, was not, by any of these causes or all combined, so deprived of his mental faculties, according to any evidence in the cause, that he could not distinctly under *613 stand what he willed and was about to do; or so that he could not reflect, and reason, and deliberate, and determine, and choose what he would or would not do. According to the evidence, the first moving cause to commit the act, which constitutes his offence, was the injury done to a woman, for whom he felt an attachment; to her he promised redress for the insult and injury, which she had received; and, before he had himself received any personal injury, he avowed, tiiat the measure of the redress which she should receive, should be filled with the heart’s blood of the deceased before sunset. And after he had shed the blood of the deceased, as he had threatened, he said, “ he had killed the damn’d rascal, and was glad of it; that he would do the like by any man who should strike the woman he loved, and that any man of spirit would do the like.” It is true he had received a severe blow, in the mean time, which was calculated to increase, and no doubt did increase, his resentment against the deceased. But still he referred the revenge he had sought and taken, to the original cause of offence—the'blow given to the woman he loved. A considerable time elapsed after both causes of offence, and threats of deadly revenge were made, before he executed his purpose ; at least three quarters of an hour; in which time his resentment might have cooled. He employed this time, not iu hasty but in deliberate preparation to execute the purpose he had avowed of shedding the blood of the deceased. He dressed his wound, adjusted his clothes, and, being apparently composed, deliberately armed himself with a dirk, or, being already thus armed, went abroad a considerable distance in quest of a gun; chose one with cautious circumspection and judgment; deliberately tried its fitness for the object he had in view, a sure fire; primed, snapped, and flashed it; procured powder and lead, and loaded it; and, thus armed with a drawn dirk, and a loaded gun, traversed the public streets, passed the market place, where, perchance, he might meet the deceased, and, finally, sought him at his boat where he found him ; and then, with delibe *614 rate aim, shot him to death, while the deceased was unarmed, unresisting, and in actual flight from him. This must certainly be “ a wilful, deliberate, and premeditated killing.” And, therefore, this court, in answer to the first question propounded, doth unanimously decide, that a new trial ought not to be granted on the ground therein referred to.
As to the second question, this court is, unanimously, of the opinion, that, on a motion for a new trial, the court is not bound to re-examine the witnesses, or to state the evidence verbatim as it was given by the witnesses; and doth, therefore, decide, that a new trial ought not to be awarded for that cause.
As to the third question adjourned : the three jurors referred to, as it appears from the record, were called as bystanders, and were severally, before they were sworn of jury, at the instance of the prisoner, sworn to answer questions, touching their indifferency. In answer to these questions, they each said for himself, that they had expressed opinions on the prisoner’s case, and disclosed generally the grounds on which they had so expressed opinions. Wilkins said he had heard part of the evidence : Gilliam and Angle had heard no part of the evidence, and nothing but the accounts and rumours which were circulated in town : they all said, they had no prejudice against the prisoner, or bias on their minds, so as that they could not give him a fair and impartial trial, in like manner as if they had heard nothing about the affair: and the prisoner, thereupon, elected them, and they were sworn to try his cause. Several days after a verdict was returned against the prisoner, and a motion for a new trial on the merits had been overruled, thq prisoner moved for a new trial on the ground of exceptions to these jurors, which, if good, existed at, and before, the time when they were empanneled, but which were then unknown to the prisoner. In support of these exceptions to the jurors, severally, the prisoner adduced witnesses to prove the various opinions which they had expressed unfavourable to his acquittal. But we do not perceive, that any *615 of these witnesses prove any thing inconsistent with what the jurors respectively disclosed on their voir dire. They did not disclose when, where, and to whom they had expressed their opinions, because the prisoner did not demand it. They did not disclose what were the precise opinions they had expressed, whether favourable or unfavourable to the prisoner, because that would have been improper. But they did distinctly disclose the fact, that they had expressed opinions as to what would be the result of his trial, and thereby put him upon his guard. If, in this state of things, the prisoner is at liberty to elect a juror, and take a chance for his acquittal,, if the juror should be favourably disposed for it, and to set aside the verdict, if the juror should have expressed opinions unfavourable to it, then almost every verdict of guilty would be set aside. For it is most probable, nay almost certain, that twelve men could not be selected, without previous examination, from any neighbourhood in which an atrocious murder or other felony has been committed, no one of whom has heard of the offence, and expressed an opinion unfavourable to the discharge of the perpetrator. And it is also certain, that by diligent inquiry, for several days pursued, among the neighbours of such one or more, proof could be obtained to establish what was the opinion expressed. This is a practice which should not be indulged. Besides, if the opinion expressed should not, when truly proved, with all the circumstances under which it was uttered, be a good cause of challenge, it might be easily modified by the addition or abstraction of a single word, or at most of a few words. And if the party accused be a man pf wealth, of influence, and numerous friends, it would be an easy matter to find some one to make the little, though needful, addition or abstraction, to suit the occasion. And in favour of life, this effort would be made, and with the greatest probability of success, if new proofs were received several days after a motion had been overruled on the merits, and the precise points, in which the prisoner’s evidence was deficient, pointed out by *616 the court. This practice leads directly to penury and cor- . , f , J ? J J ruption, and ought not to be allowed.
But if the practice here condemned were allowable, a majority of this court is of the opinion, that no sufficient cause of challenge, against the jurors, is established in this case. For, although the-cause of challenge might have been sufficient, if proved by the prisoner, without the oath of the jurors respectively, yet, after he has caused them to be sworn, and appealed to their testimony, he shall not thereafter be permitted to reject it altogether, without proof that falsifies it; and if it is not so falsified, it should be taken in conjunction with the testimony of his subsequent witnesses, so as to form one whole; and, in this point of view, if the cause of challenge so proved, had been alleged before the jurors were sworn, it would not have been sufficient. This conclusion is not contradicted, but supported, by the decisions of this court, in Kennedy’s case, 2 Virg. Ca. 510. Smith’s case, Id. 6. Poore’s case, Id. 474.
There is another view of this case, which presents itself to the consideration of this court. We do not know of any case decided in England, or in this country, in which, after a juror had been elected by the prisoner, without making any previous objection to him, a new trial has been granted on the single ground of any cause of challenge for favour existing at the time of his being elected, whether known or unknown to the prisoner. Our statute provides, in terms, “ that no exception against any juror on account of his estate, or age, or any other legal disability, shall be allowed after he is sworn.” But, as the judge who presides in a criminal case, especially of life and death, ought to be satisfied before he pronounces sentence, that the judgment which he pronounces is just, he may, notwithstanding this act, hear such suggestions of the prisoner, upon proof, as go to shew any flagrant fraud on the part of the juror towards the prisoner, or such unquestionable hostility towards him as necessarily to render it not only improbable, but almost impossible, that such a juror could give the prisoner a fair and impartial *617 trial; and this, although the exception proved against the juror existed before he was elected and sworn. Yet, in the absence of any decision to sustain the position, we cannot consider it as a matter of right, ex debito justitice, that the prisoner should have a new trial, in every case, wherein he could shew such cause of challenge against a juror, after trial, as might have been allowed if made before the juror was sworn; especially in a case, wherein the prisoner, having caused the juror to be sw7orn on his voir dire, elected to be tried by him, without taking any exception. When the prisoner excepts to a juror for cause, before he is sworn, it is matter of right, to be adjudged by the court; when he excepts after trial, for cause existing before the juror was elected and sworn, it is matter addressed to the discretion of the court: in the exercise of this discretion the court ought to consider the whole case, and be satisfied that justice has been done. To grant the prisoner a new trial in the present case, would be to allow that a cause of challenge existing at the time, hut not asserted by the prisoner, because it was not known to him, should be as available to the prisoner, after the juror, being elected by the prisoner, has been sworn, and a verdict rendered, as if it had been asserted before ; and this cause to be proved by testimony conflicting with the evidence selected by the prisoner himself, the oath of the juror; which, in this case, is proved, in relation to each juror, to be above exception. The decisions of this court heretofore made, do not present this precise view of the question, but they tend to fortify the opinion herein expressed.
Upon the whole matter, this court is of opinion, and doth decide, that a new trial ought not to be granted for any cause suggested by the record; aud that the circuit court ought to proceed to pronounce judgment upon the verdict of the jury, according to law.