1. A juror's having expressed himself, before the jury was empanneled, as determined to punish a prisoner if taken on the jury, not from any malice towards him, but from an opinion of his conduct, is no ground for setting aside the verdict and granting a new trial.
2. An indictment for arson, according to the form at common law, is sufficient in a case of arson in the day time.
3. To convict of the offence of burning at night, it seems, the indictment must charge the burning in the night.
4. Though the offence of burning in the day time may be charged in the common law form, yet it is more appropriate to charge the burning in the day time.
5. QUÆRE: If the common law offence of arson is abolished.
6. Upon a joint indictment against several, the Commonwealth may elect to try them separately.
7. The indictment charges the setting fire to and burning the dwelling house of E, on the 11th of February 1850. The verdict is, guilty of arson in the day time, on the 11th of February 1850. The verdict is sufficiently certain.
At the June term 1850 of the Circuit court for the county of Augusta, the grand jury found an indictment for arson against Martin Curran and eight others. The indictment charged that they feloniously, wilfully and maliciously did set fire to and burn down a certain *Page 620 
dwelling house of one Charles East, contrary to the form of the statute, c.
Curran was tried separately, and the jury found him guilty of arson in the day time; and fixed the term of his confinement in the penitentiary at three years. After the verdict he applied to the Court by petition in writing for a new trial, on the ground that one of the jury, Joseph T. Mitchell, had formed and expressed an opinion unfavourable to the prisoner before he was called as a juror; of which fact the prisoner was ignorant until after the rendition and recordation of the verdict.
The petition of the prisoner was sworn to by him, and was accompanied by the affidavits of William H. Grooms and H. St. J. Davis. Grooms stated that whilst the Court was empanneling the jury in the case of Chandler, tried for murder in the same Court, immediately preceding the trial of the prisoner, the affiant was standing by Joseph T. Mitchell in the courthouse, and heard Mitchell say that he had been summoned upon the venire in the Irish cases, and if he was taken upon the jury he would give them goss, or give them hell, or some other expression of that kind; the exact words the affiant does not remember, but the substance was, he would punish them.
Davis states, that during the trial of Chandler for murder at the present term of the Court, he had been in attendance upon the trial, and that as he left the courthouse he saw Joseph T. Mitchell, one of the jurors who tried the case of Curran, standing upon the porch in front of the courthouse, in company with several others, and as affiant passed said Mitchell and his company, he heard Mitchell say he had been summoned upon the venire in the Irish cases, and affiant says he thinks Mitchell remarked in substance, in reply to some question asked him, that something ought to be or would be done with the Irish. *Page 621 
These witnesses being present in Court were examined orally before the Court, and made the same statement as that contained in their affidavits. The counsel for the prisoner then stated that they were prepared to prove that Mitchell, after the discharge of the jury, had stated that he as a juror was for sending the prisoner to the penitentiary for ten years; and that he would have been for a longer term if the law would have allowed it; but no witness was introduced to prove such declaration.
Mitchell was himself examined, and stated that he had made up no opinion of the guilt or innocence of the prisoner, nor had he expressed any before he sat on his jury. That he did not know the prisoner personally up to the time he was sworn as a juryman, nor indeed any of the Irish prisoners who were then in custody. That he had no prepossession whatever for or against the prisoner; and gave him a fair trial on the law and the evidence, as he understood them. That he heard the evidence in the case of Chandler, which was tried just before that of the prisoner; and that he expressed his opinion freely that said Chandler was guilty, and if he was on the jury he would convict him. These opinions were expressed during the progress of Chandler's trial, and must have been misunderstood and misapplied by Grooms and Davis to the Irish; as he expressed no opinion as to them.
And this being all the evidence, the Court refused to grant the new trial; and the prisoner excepted.
The prisoner then moved the Court in arrest of judgment, for errors apparent on the face of the record, viz: That the offence for which he was tried was not set forth in the indictment with sufficient certainty to enable the Court to give judgment thereon according to the very right of the case; it not being stated or averred whether the prosecution is for burning a dwelling house in the night time under the act of Assembly, *Page 622 
entitled, "An act to reduce into one the several acts concerning crimes and punishments and proceedings in criminal cases," passed March 14th, 1848, ch. 4, § 1; or for burning a dwelling house in the day time, under the same act, ch. 4, § 2. But the Court overruled the motion and proceeded to give judgment; and the prisoner again excepted.
The prisoner applied to this Court for a writ of error, and assigned five different causes of error in his petition. All of which are noticed in the opinion of the Court.
The first ground of error assigned in the prisoner's petition for the writ, is the refusal of the Circuit court to set aside the verdict and award him a new trial. The motion was founded upon exceptions taken after verdict to the competency of one of the venire, Joseph T. Mitchell; the grounds of incompetency, as disclosed by the first bill of exceptions, being the expression of an opinion by the juryman unfavourable to the accused, which would have been good ground for challenge to the favour had it been known to him, and of which he was unapprised until after the trial. The declarations imputed to the juryman are deposed to by two witnesses. He was called and examined, and upon his oath affirmed, as he had done before he was elected and sworn, his perfect impartiality; denied all prejudice or bias, and denied the declarations imputed to him in reference to the case of the prisoner. His affidavit renders it highly probable, to say the least, that the two witnesses were mistaken in referring what the juryman admits he did say, to the case of the prisoner, instead of Chandler, who was on his trial for murder. But had the affidavits of the two witnesses remained wholly uncontradicted and unexplained, they certainly furnish no ground for a new trial. It would be supererogatory to argue the question. It is conclusively settled by authority *Page 623 
to be found in the former adjudications of this Court.Smith's Case. 2 Va. Cases 6; Poore's Case, Id. 474; Kennedy's Case, Id. 510; Brown's
Case, Id. 516; Hughes' Case, 5 Rand. 655;Jones' Case, 1 Leigh 598; and Hailstock's
Case, 2 Gratt. 564. In all of these cases there was graver cause for impeachment of the partiality and indifference of the juror, than in this, and in all, this Court held the new trial was properly denied.
The second error alleged, which raises the question of the sufficiency of the indictment upon motion in arrest of judgment after verdict, is the most important and plausible of the series, and in truth the only one deemed worthy of much consideration. The prisoner, with eight others, was indicted for feloniously, wilfully and maliciously setting fire to and burning down a certain dwelling house of one Charles East. The indictment pursues the common law form of indictment for arson, omitting to state whether the burning was in the night or the day time, merely alleging that it occurred on the 11th day of February 1850. The jury found him guilty of arson in the day time, on the 11th day of February 1850, and ascertained the period of his confinement in the jail and penitentiary house of the State to be three years. It is objected that this indictment is fatally defective for vagueness and uncertainty in omitting to state whether the burning was in the night or the day time. It is said the common law offence of arson is wholly abrogated and repealed by the revised criminal statute, to be found in the Sessions Acts of 1847-8, p. 99, ch. 4; and that by the 1st and 2d sections of that act two distinct statutory offences are created in relation to the burning of a dwelling house; the first the offence of burning in the night time; the second, the offence of burning in the day time; the first punishable with death, unless the jury shall find that at the time of committing the offence there was no person in the dwelling *Page 624 
house; and if they should so find, then the punishment should be confinement in the penitentiary for not less than 5 nor more than 10 years; the second punishable by confinement in the penitentiary for not less than 3 nor more than 10 years. It is then argued that as common law arson, which was irrespective of the time of day or night, was repealed; and in lieu of it, two distinct statutory offences created, which had regard to the time of the burning, the time, whether by day or by night, became an element in and of the essence of the offence; and that it became as necessary to charge the time, whether it be night or day, as to charge in burglary that the breaking and entry was by night. In the view which I have taken of this question, I do not consider it important to moot the point whether our statute has wholly abrogated the common law, and in its stead substituted new statutory offences; or whether the statute creates no new offence, but like our statute on the subject of felonious homicide, (which only graduates the common law offence, and measures the amount of the punishment by the degree of the offence,) makes the grade of the common law offence of arson, and the punishment to be inflicted, depend upon the time and circumstances of its commission. Thus at common law the felonious, wilful and malicious burning of a dwelling house was of equal malignity and enormity whether by day or night; by our statute, a felony, whether by day or night; but more enormous in legal contemplation, and more penal, if done by night than day. It is conceded that the change in the common law made by our statute graduating felonious homicide has made no change in the frame of the indictment — indeed it has been held that a change is not only unnecessary, but would be improper. In view of this apparent if not real analogy between the two cases of homicide and arson, it might with much plausibility be, as it has been contended, that no change in the frame of the *Page 625 
indictment for the burning of a dwelling house, whether under the 1st or 2d section, was made necessary by the new statute. That by analogy to the proceeding upon an indictment for murder, upon a common law indictment for arson the jury should be charged to find whether committed by day or by night; and whether any person was in the house at the time of committing the offence, and find a verdict graduating the offence and the punishment according to the statute. Such a practice, if admissible, would certainly be convenient, rendering a single count sufficient, where otherwise, in the event of a doubt about the time of the burning, double counts would be necessary; and I do not perceive there is more objection to it upon the score of possible injury or surprise to the accused, than in the case of homicide. But it must be admitted that there is this difference between the cases of homicide and arson, and to that extent the analogy fails. The common law indictment for murder was adapted to the highest grade of murder under our statute — killing with malice prepense; hence upon the principle of the greater including the less, there was no necessity of change occasioned by the statute. Whereas, the common law indictment for arson was equally applicable to a burning whether by day or by night, to the greater and the lesser offences under the statute; and hence is the necessity of a change to meet the exigencies and requirements of the statute: and the only question is as to the extent of the change. To convict of the highest offence — a burning in the night under the first section, I concede that the indictment must charge the burning in the night, as in burglary. Here the analogy is complete between breaking in the night and burning in the night; but to convict of the minor offence — burning in the day — I hold that it is not indispensably necessary to charge expressly a burning by day; because the burning *Page 626 
of a dwelling house feloniously, wilfully and maliciously, is a crime both at common law and under the statute; at common law equally penal whether burnt by day or night; and by the statute more penal if burnt by night than by clay. The burning must ex necessitate rei either be in the night or day. The act of felonious burning being charged, omitting to state that it was done in that part of the day called night, which would constitute it the greater offence, is in legal contemplation and intendment, tantamount and equivalent to a charge of the minor offence — a burning in the day time. Therefore I must regard this indictment as sufficient, under the 2d section of the statute, to warrant a conviction for burning in the day time. I cannot perceive how such a decision can by possibility operate any surprise or injury to the party accused. He is charged with an act committed in some portion of a day of 24 hours. If done in one portion of that day it is a capital offence; if done in another portion of the day it is a lesser offence. These are the only alternatives. A failure to lay the act in that period of the day which would import a charge of the higher offence, by inevitable intendment, imports a charge of the minor offence. By sustaining such an indictment there seems to me to be no possibility of injury or surprise. On the contrary whilst the accused can never be prejudiced by it, he might be benefited by a conviction for the lesser, when he had been guilty of the higher offence.
But whilst I consider the indictment sufficient upon demurrer or motion to quash before verdict; and more especially after verdict, upon motion in arrest of judgment, I must admit it would have been better, more in accordance with the spirit of, because more conducive to that high degree of certainty so desirable in, criminal pleadings, had it charged the time of the burning expressly in the day time, thereby leaving no room for intendment or implication, however inevitable. It seems to me advisable *Page 627 
in all cases of doubt as to the time of the burning, whether in the night or the day time, to frame the indictment with two counts, so as to adapt it to the proof of either.
I am of opinion, that the objection upon which the third error assigned is based, is neither sound nor plausible. It alleges "that it was error to try the prisoner separately, it not appearing that he elected to be so tried."
By the common law, until it was changed by a recent act for the summoning of venires and empanneling juries in criminal cases, the Commonwealth and not the prisoner, in case of joint indictments, had the right of election subject to the control and discretion of the Court, whether to arraign and try prisoners or defendants jointly indicted, separately or jointly. By the law now in force, (see Revised Criminal Statute, Sessions Acts 1847-8, p. 149, sections 11 and 12.) each defendant has a right to a separate trial, if he so elect. Indeed, they must necessarily be tried separately where the offence is felony, unless they elect a joint trial and agree in their challenges. But even if they should so elect, the attorney for the Commonwealth or the Court may nevertheless elect to have a separate trial; so that whilst any and every joint defendant is entitled to a separate trial if he so elect, against the will of the Court, or the attorney for the Commonwealth, joint defendants cannot be tried jointly without the concurrent election of themselves, on the one hand, and the attorney for the Commonwealth or the Court on the other. But were the law even such, as the objection takes for granted, that it was the right of the prisoner to be tried jointly or separately at his election, there is nothing in the record to shew that he made his election to be tried jointly, and that the right (if it had existed,) was denied him. And no such fact appearing on the record by bill of exceptions or otherwise, none such can be presumed to *Page 628 
have existed. On the contrary, the presumption must be that he elected a separate trial, as he was so tried without any objection spread upon the record.
Of the same character, and as groundless as the last, is the objection taken in the 4th assignment of errors; "That it was error to try your petitioner by a jury not composed of the venire summoned for the purpose; no reason appearing for summoning others, and it not appearing how or by whom they were called." The answer is, that in the absence of any objection spread upon the record by bill of exceptions or otherwise, it must necessarily be presumed that the jury which was elected, tried and sworn, was properly selected from and composed of persons legally summoned, and in all respects constituted according to law.
Nor is there any validity in the objection which is made the foundation of the 5th and last assignment of errors; "That it was error to give judgment upon the verdict rendered in the cause, because not responsive to the charge in the indictment." The charge was setting fire to and burning the dwelling house of one Charles East, on the 11th day of February 1850. The verdict is guilty of arson in the day time on the 11th of February 1850. What arson or burning did the jury mean? The only answer that can be given, is the arson or burning, whether you choose to denominate it statutory or common law, charged in the indictment. I interpret the verdict to mean the same thing as if it had said, "we of the jury find the prisoner guilty of the burning in manner and form as in the indictment against him is charged, and we find that it was committed in the day time on the 11th of February 1850."