Thompson, J.
The first ground of error assigned in the prisoner’s petition for the writ, is the refusal of the Circuit court to set aside the verdict and award him a new trial. The motion was founded upon exceptions taken after verdict to the competency of one of the venire, Joseph T. Mitchell; the grounds of incompetency, as disclosed by the first bill of exceptions, being the expression of an opinion by the juryman unfavourable to the accused, which would have been good ground for challenge to the favour had it been known to him, and of which he was unapprised until after the trial. The declarations imputed to the juryman are deposed to by two witnesses. He was called and examined, and upon his oath affirmed, as he had done before he was elected and sworn, his perfect impartiality; denied all prejudice or bias, and denied the declarations imputed to him in reference to the case of the prisoner. His affidavit renders it highly probable, to say the least, that the two witnesses were mistaken in referring what the juryman admits he did say, to the case of the prisoner, instead of Chandler, who was on his trial for murder. But had the affidavits of the two witnesses remained wholly uncontradicted and unexplained, they certainly furnish no-ground for a new trial. It would be supererogatory to argue the question. It is conclusively settled by autho *623 rity to be found in the former adjudications of this Court. Smith's Case, 2 Va. Cases 6; Poore's Case, Id. 474; Kennedy's Case, Id. 510; Brown's Case, Id. 516 ; Hughes' Case, 5 Rand. 655; Jones' Case, 1 Leigh 598; and Hailstock's Case, 2 Gratt. 564. In all of these cases there was graver cause for impeachment of the partiality and indifference of the juror, than in this, and in all, this Court held the new trial was properly denied.
The second error alleged, which raises the question of -the sufficiency of the indictment upon motion in arrest of judgment after verdict, is the most important and plausible of the series, and in truth the only one deemed worthy of much consideration. The prisoner, with eight others, was indicted for feloniously, wilfully and maliciously setting fire to and burning down a certain dwelling house of one Charles East. The indictment pursues the common law form of indictment for arson, omitting to state whether the burning was in the night or the day time, merely alleging that it occurred on the 11th day of February 1850. The jury found him guilty of arson in the day time, on the 11th day of February 1850, -and ascertained the period of his confinement in the jail and penitentiary house of the State to be three years. It is objected that this indictment is fatally defective for vagueness and uncertainty in omitting to state whether the burning was in the night or the day time. It is said the common law offence of arson, is wholly abrogated and repealed by the revised criminal statute, to be found in the Sessions Acts of 1847-8, p. 99, ch. 4; and that by the 1st and 2d sections of that act two distinct statutory offences are created in relation to the burning of a dwelling house; the first the offence of burning in the night time.; the second, the offence of burning in the day time; the first punishable with death, unless the jury shall find that at the time of committing the offence there was no person in the dwelling *624 house; and if they should so find, then the punishment should be confinement in the penitentiary for not less than 5 nor more than 10 years; the second punishable by confinement in the penitentiary for not less than 3 nor more than 10 years. It is then argued that as common law arson, which was irrespective of the time of day or night, was repealed; and in lieu of it, two distinct statutory offences created, which had regard to the time of the burning, the time, whether by day or by night, became an element in and of the essence of the offence; and that it became as necessary to charge the time, whether it be night or day, as to charge in burglary that the breaking and entry was by night. In the view which I have taken of this question, I do not consider it important to moot the point whether our statute has wholly abrogated the common law, and in its stead substituted new statutory offences; or whether the statute creates no new offence, but like our statute on the subject of felonious homicide, (which “only graduates the common law offence, and measures the amount of the punishment by the degree of the offence,) makes the grade of the common law offence of arson, and the punishment to be inflicted, depend upon the time and circumstances of its. commission. Thus at common law the felonious, wilful and malicious burning of a dwelling house was of equal malignity and enormity whether by day or night; by our statute, a felony, whether by day or night; but more enormous in legal contemplation, and more penal, if done by night than day. It is conceded that the change in the common law made by our statute graduating felonious homicide has made no change in the frame of the indictment' — ■ indeed it has been held that a change is not onlyamnecessary, but would be improper. In view of this apparent if not real analogy between the two cases of homicide and arson, it might with much plausibility be, as it has been contended, that no change in the frame of the *625 indictment for the burning of a dwelling house, whether under the 1st or 2d section, was made necessary by the new statute. That by analogy to the proceeding upon an indictment tor murder, upon a common law indictment for arson the jury should be charged to find whether committed by day or by night; and whether any person was in the house at the time of committing the offence, and find a verdict graduating the offence and the punishment according to the statute. Such a practice, if admissible, would certainly be convenient, rendering a single count sufficient, where otherwise, in the event of a doubt about the time of the burning, double counts would be necessary; and I do not perceive there is more objection to it upon the score of possible injury or surprise to the accused, than in the case of homicide. But it must be admitted that there is this difference between the cases of homicide and arson, and to that extent the analogy fails. The common law indictment for murder was adapted to the highest grade of murder under our statute — killing with malice prepense; hence upon the. principle of the greater including the less, there was no necessity of change occasioned by the statute. Whereas, the common law indictment for arson was equally applicable to a burning whether by day or by night, to the greater and the lesser offences under the statute ; and hence is the necessity of a change to meet the exigencies and requirements of the statute : and the only question is as to the extent of the change. To convict of the highest offence — a burning in the night under the first section, I concede that the indictment must charge the burning in the night, as in burglary. Here the analogy is complete between breakiug in the night and burning in the night ; but to convict of the minor offence — burning in the day — I hold that it is not indispensably necessary to charge expressly a burning by day; because the burn *626 ing of a dwelling house feloniously, wilfully and maliciously, is a crime both at common law aud under the statute; at common law equally penal whether burnt by day or night; and by the statute more penal if burnt by night than by day. The burning must ex necessitate rei either be in the night or day. The act of felonious burning being charged, omitting to state that it was done in that part of the day called night, which would constitute it the greater offence, is in legal contemplation and intendment, tantamount and equivalent to a charge of the minor offence — a burning in the day time. Therefore I must regard this indictment as sufficient, under the 2d section of the statute, to warrant a conviction for burning in the day time. I cannot perceive how such a decision can by possibility operate any surprise or injury to the party accused. He is charged with an act committed in some portion of a day of 24 hours. If done in one portion of that day it is a capital offence; if done in another portion of the day it is a lesser offence. These are the only alternatives. A failure to lay the act in that period of the day which would import a charge of the higher offence, by inevitable intendment, imports a charge of the minor offence. By sustaining such an indictment there seems to me to be no possibility of injury or surprise. On the contrary whilst the accused can never be prejudiced by it, he might be benefited by a conviction for the lesser, when he had been guilty of the higher offence.
But whilst I consider the indictment sufficient upon demurrer or motion to quash before verdict; and more especially after verdict, upon motion in arrest of judgment, I must admit it would have been better, more in accordance with the spirit of, because more conducive to that high degree of certainty so desirable in, criminal pleadings, had it charged the time of the burning expressly in the day time, thereby leaving no room for intendment or implication, however inevitable. It seems to me advisa *627 ble in all cases of doubt as to the time of the burning, whether in the night or the day time, to frame the indictment with two counts, so as to adapt it to the proof j, . , • Ot either.
I am of opinion, that the objection upon which the third error assigned is based, is neither sound nor plausible. It alleges “ that it was error to try the prisoner separately, it not appearing that he elected to be so tried.”
By the common law, until it was changed by a recent act for the summoning of venires and empanneling juries in criminal cases, the Commonwealth and not the prisoner, in case of joint indictments, had the right of election subject to the control and discretion of the Court, whether to arraign and try prisoners or defendants jointly indicted, separately or jointly. By the law now in force, (see Revised Criminal Statute, Sessions Acts 1847-8, p. 149, sections 11 and 12,) each defendant has a right to a separate trial, if he so elect. Indeed, they must necessarily be tried separately where the offence is felony, unless they elect a joint trial and agree in their challenges. But even if they should so elect, the attorney for the Commonwealth or the Court may nevertheless elect to have a separate trial: so that whilst any and every joint defendant is entitled to a separate trial if he so elect, against the will of the Court, or the attorney for the Commonwealth, joint defendants cannot be tried jointly without the concurrent election of themselves, on the one hand, and the attorney for the Commonwealth or the Court on the other. But were the law even such, as the objection takes for granted, that it was the right of the prisoner to be tried jointly or separately at his election, there is nothing in the record to shew that he made his election to be tried jointly, and that the right (if it had existed,) was denied him. And no such fact appearing on the record by bill of exceptions or otherwise, none such can be presumed to *628 have existed. On the contrary, the presumption must be that he elected a separate trial, as he was so tried without any objection spread upon the record.
Of the same character, and as groundless as the last, is the objection taken in the 4th assignment of errors ; “ That it was error to try your petitioner by a jury not composed of the venire summoned for the purpose; no reason appearing for summoning others, and it not appearing how or by whom they were called.” The answer is, that in tho absence of any objection spread upon the record by bill of exceptions or otherwise, it must necessarily be presumed that the jury which was elected, tried and sworn, was properly selected from and composed of persons legally summoned, and in all respects constituted according to law.
Nor is there any validity in the objection which is made the foundation of the 5th and last assignment of errors ; “ That it was error to give judgment upon the verdict rendered in the cause, because not responsive to the charge in the indictment.” The charge was setting fire to and burning the dwelling house of one Charles East, on the 11th day of February 1850. The verdict is guilty of arson in the day time on the 11th of February 1850. What arson or burning did the jury mean ? The only answer that can be given, is the arson or burning, whether you choose to denominate it statutory or common law, charged in the indictment. I interpret the verdict to mean the same thing as if it had said, “ we of the jury find the prisoner guilty of the burning in manner and form as in the indictment against him is charged, and we find that it was committed in the day time on the 11th of February 1850.”
Field, J.
As to the prisoner’s motion to grant him a new trial, upon the exceptions taken to the juror after the verdict was rendered, I concur in opinion with the Judge of the Circuit court.
*629 But I regard the indictment as fatally defective, in not stating that the offence was committed in the day time of some day. The law makes it felony to bum a dwelling house by night, punishable by death. This is one offence. The law also makes it felony punishable by confinement in the penitentiary to burn a dwelling house by day. These are not common law of-fences. They are statutory offences, separate and distinct, and having no connection with each other. They are not grades of the same offence — one a lower grade, and the other a higher grade, as would be in the case of homicide, which might be involuntary manslaughter, voluntary manslaughter, murder in the second or murder in the first degree. The doctrine of arson at common law seems to have been abolished by the new Criminal Code of 1847-8, and the burning of a dwelling house in the day is made felony, punishable by confinement in the penitentiary. The jury finds the prisoner guilty of arson in the day; and it is contended that this finding of the jury cures the supposed defect in the indictment. It is a rule well established in criminal prosecutions, that the indictment must set forth all the material circumstances of the offence. Hence, in an indictment for burglary, it must be alleged that the fact was committed in the night time of some day. No indictment would be sustained which omitted this averment. It would be a defect that could not be cured by a verdict. Suppose that the law made it felony to burn a dwelling house in the day time only, and said nothing about the burning of a dwelling house at night. Everybody, I presume, will admit that in framing an indictment upon the statute, it would be necessary to aver that the offence was committed in the day time of some day, specified in the indictment. The word day in an indictment, means the whole 24 hours, of Avhich for one half of the year there is more night than day. Hence the necessity in an indictment for bur-. *630 glary, to aver that the offence was committed in the night time of some certain day; and equally necessary is it to aver in an indictment for burning a dwelling house under our statute, that the fact was committed in the day time of some day. And why is it so ? The reason is plain; because the time is a material circumstance of the offence. Now let us suppose that another law is passed, making it felony punishable with death to burn a dwelling house in the night, would time then become a less material circumstance than it was before the passage of the last law. I should presume not. If time is a material circumstance of the offence, it will be so in all cases, and the pleadings must be made to conform to it.
The verdict of the jury upon an indictment for felony should be certain, and should respond to the indictment. The prisoner was indicted for burning a dwelling house. The jury found him guilty of arson committed in the day time. Now what is arson ? Arson is the burning of a dwelling house feloniously. The term dwelling house embraces the dwelling house proper, kitchen, meat house, dairy, offices, barn and stables, and all other out buildings within the curtilage of the dwelling house. The finding of the jury may be construed to apply to this offence, and may have been rendered upon proof of the prisoner’s burning a barn, stable, or some other out building falling within the common law definition of arson; when no out house, is to be regarded as the dwelling house, unless it be under the same roof with the dwelling house proper.
Upon the whole, I am of opinion that the judgment should be arrested, and for that purpose would award the writ of error.
Judges Lomax and Leigh concurred in the opinion of Judge Thompson.
Writ of error denied.