ROBERTSON, J.
If the juror Wa3'ne had been challenged *before he was sworn, because of his having been a member of the grand jury that found the indictment, there can be no doubt that the court would have been bound to exclude him from the jury for the trial of the prisoner. But not having been so challenged, his serving upon it was not of itself sufficient ground upon which to set aside the *988 verdict. A party is not entitled to a new trial, as a matter of right, because he is able after verdict to show such cause of challenge against a juror as would have been allowed if made before he was sworn.
“When the prisoner excepts to a juror for cause, before he is sworn, it is matter of right, tobe adjudged by the court; when, he excepts after trial, for cause existing before the juror was elected and sworn, it is matter addressed to the discretion of the court: in the exercise of this discretion the court ought to consider the whole case, and be satisfied that justice has been done.”
This is the rule as laid down in Jones’ Case, 1 Leigh 598; and it has been uniformly adhered to in this state. In applying it, the court regards with extreme jealousy all attempts to set aside verdicts on the ground of objections to jurors existing before they were sworn. A verdict will not be disturbed for any such cause, unless it appears to have operated so as to inflict injustice upon the prisoner. Heath v. The Commonwealth, 1 Rob. R. 735; Curran’s Case, 7 Gratt. 619.
In the case of Dilworth v. The Commonwealth, 12 Gratt. 689, the objection that one of the jurors had been a member of the grand jury that found the indictment, was made after the jury were sworn, but before any of the evidence was heard. The prisoner’s affidavit that he did not know of the objection until after the juror had been sworn, was sustained by the affidavit of the jailor who gave him the information. The prisoner brought the matter to the notice of the court as soon as possible, and there was no reason to 7 *suspect that, in making the objection, he had any other object in view than to secure an impartial jury for his trial.
Under these circumstances, this court held that the court below exercised its discretion erroneously, in refusing to set aside the juror and substitute another in his place. But the case was carefully distinguished from that of an attempt on the part of a prisoner to avoid the effect of an adverse verdict, “on the score of objections to his triers, existing before they were chosen and sworn;” and the decision was rested on the ground, that “the principles to be deduced from- the modern decisions justify an indulgence to motions to set aside jurors after they have been sworn and before they have rendered a verdict, which would not be allowed to applications for new trials founded on exceptions to jurors taken after verdict. ”
In England, after a juror has been swoim, he cannot, except by consent, be challenged for any pre-existing cause. Hawkins’ Pleas of the Crown, book II, ch. 43; Bacon’s Abr. tit. Juries E. 11; 1 Chitty’s Crim. Law 545. But (as was suggested in Dil-worth’s Case) it is probable “that English judges would not now deny their power to_ set aside a juror, at the instance of a prisoner, at any time before the examination of the witnesses had commenced.”
In the United States, the decisions on this subject are conflicting, the English rule being adhered to in some of the states, while in others it appears to be held that where the\objection to the juror would be good cause of challenge for favor, if discovered in time, it will be ground for a new trial, as a matter of right, if not found out until after verdict.
Even if we were not bound by our own decisions, we would not hesitate to prefer the rule which has been established here, as being the one most consonant with justice and public policy.
*It is a principal cause of challenge to a juror, that he was one of the grand jury which found the indictment. But unless he is challenged before he is sworn, the objection will be considered as waived, and his being on the jury will not vitiate the verdict. The only case in which the failure to make the challenge cannot properly be regarded as a waiver, is where the objection was not known, and could not, by the exercise of reasonable diligence, be known to the prisoner until after the juror was sworn. But while in such case the prisoner ought not, on the one hand,' to be treated as if he had waived the objection, he should not, on the other, be allowed the same benefit of it after verdict, as if it had been made before the jury were sworn. The juror is excluded if objected to before he is sworn, because of his presumed bias. It is probable, from his position, that he will not be able to act impartially; and because of this probability, the prisoner has the right to exclude him. But it is a different matter after verdict. The fairness of the juror has then been tested by experiment. The court can, upon a review of the whole case, and of every thing relating to the conduct of the juror in reference to it, determine, with a reasonable degree of certainty, whether the apprehended bias did really exist. If it appears that it did exist, the prisoner is entitled to have the verdict set aside, because his trial has not been fair and impartial; but if it is obvious that the juror was not influenced by any bias against the prisoner, and that justice has been done, surely the circumstance that it was at one time probable that he would be so influenced, can afford no reason for disturbing the verdict.
To permit prisoners to avail themselves, after verdict, of pre-existing objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences.
*The delays in the administration of criminal justice, and the chances for the escape of the guilty, would be greatly increased. Proper verdicts, especially in trials for grave offences, would be continually set aside. A prisoner knowing, or willfully remaining ignorant of the incompetency of a juror, would take the chances of a favorable verdict, with him upon the jury; and if the verdict should be adverse, would readily enough make the affidavit necessary to avoid its effect.
I think, therefore, if it be conceded that the prisoner in this case was ignorant until *989 after the -verdict that Wayne was a member ox the grand jury, and that lie could not, by an exercise of proper diligence, have sooner ascertained the fact, that the court was not hound to set aside the verdict and grant a new trial because Wayne was also upon the petit jury, unless it appeared that his serving on it caused injustice to be done to the prisoner.
But there is no sufficient evidence that it could not, by the exercise of due diligence, have been ascertained before the verdict was rendered, that Wayne was a member of the grand jury. It is true, the affidavit of the prisoner states that he had no means of knowing- it before or during the trial, by the exercise of ordinary diligence on his part. But what is “ordinary diligence,” is a matter for the court, and not for the prisoner to determine. The affidavit should have stated the circumstances under which, and the person from whom the information was obtained, so as to enable the court to judge for itself whether due diligence was used; and for the further purpose of affording the means of testing- the truth of the allegation of want of knowledge.
The prisoner was entitled to a list of the jury summoned for his trial; and it was his duty to inform himself, before they were sworn, whether objections ^'existed to any of them. If there was as much anxiety before as after the verdict, to discover objections to the competency of jurors, it is difficult, in the absence of any statement of the circumstances under which the discovery was made, to understand how it happened that a fact apparent on the record oí his own case, should have remained unknown to the prisoner until the termination of a trial which lasted five days, and should then have been ascertained just in time to be used on a motion for a new trial.
But waiving all objections to the sufficiency of the affidavits, and regarding the prisoner as having broug-ht himself within the rule applicable to those who, having exercised a reasonable degree of diligence, are ignorant until after verdict of a preexisting objection to a juror, it does not appear that the court, in the exercise of its discretion, ought to have granted a new trial because of the objection to Wayne as a juror.
There is nothing' to warrant the conclusion by this court that Wayne was guilty of perjury or corruption. His explanation of his position seems to have been credited by the judge of the Circuit court, and the prisoner did not attempt to impeach its truth.
In determining whether such injustice was done the prisoner as to make it proper to set the verdict aside, the third ground of error ass’gned in the petition, namely, that “the facts certified do not warrant a conviction for murder,” must necessarily be disposed of.
The court committed no error in substituting for the instructions asked for by the prisoner, those which were given in their stead, or in giving those asked for by the commonwealth’s attorney. The law applicable to the case, in any aspect in which it might be viewed by the jury, and especially in reference to the questions of provocation and malice, was stated in a full and perspicuous manner; and there is nothing in any of the instructions of which the prisoner has a right to*complain. The question then for consideration is, did the facts proved justify the conclusion that the killing was malicious? It seems to me, after making all possible allowances for the youth and indiscretion of the prisoner, that the finding was proper.
It is true, there was provocation at the time, which, in the absence of proof of express malice, might have been sufficient to reduce the killing to manslaughter. But the proof that malicious and revengeful feelings existed, and that the prisoner acted under their influence, is abundant. He had for a week previously manifested strong animosity against the deceased, and had repeatedly stated that, on receiving any provocation from him, he would kill him. The first thing that he did, on taking part-in the contest between his father and the deceased, was to use a deadly weapon, without warning and from behind, when there was no necessity, real or apparent, for the use of such weapon. His declarations, after the fight and before he knew the serious character of the wound he had inflicted, showed that he had been prompted by the desire and intent to kill, and referred that desire and intent not to the immediate provocation, but to the previous act of the deceased in whipping his brother Julian.
If all this does not show express malice, it is difficult to say what would be sufficient proof for the purpose.
The prisoner, then, was guilty of murder, and as the verdict ascertained the minimum punishment prescribed by law for that of-fence, it cannot possibly be regarded as harsh or unjust. It may be further observed, that no effort was made by the prisoner to show that the verdict was more severe than it probably would have been if Wayne had not been a member of the jury.
The only remaining assignment of error relates to the mode of selecting the jury. If the objection were *valid, the prisoner, having failed to make it at the time the jury were chosen, could not avail himself of it after verdict. But there would have been nothing in the objection if made at the proper time. The mode adopted was as full a compliance with the lav/ requiring the jury to be selected by lot, as is the more usual one of drawing out the names of the twelve who are to serve.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Robertson, J.
Judgment affirmed.