## GEORGE CHASE
### v.
## THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE *in criminal cases — where a convict is charged with the murder of a prison officer.* Where a party is on trial upon a charge of murder, committed while he was confined in the penitentiary as a convict, upon one of the officers of the prison, who was charged with its police, but at a time when the latter was not exercising or attempting to exercise prison discipline, the question of the legality of the conviction of the prisoner under which he was at the time in prison, is not involved. The issue in such a case is, not as to the legality of such conviction, but did he do the homicide charged, and under what circumstances. These circumstances, even as to the fact that the party on trial was occupying a cell in the penitentiary as a convict, are open to the usual parol proof.

2. It is undoubtedly true, that if his conviction had been in question, it could not be established by parol.

3. JURORS—*of statutory disqualifications—necessity of challenging for cause.* Alienage in a juror is not a positive disqualification; it simply enables him to excuse himself, if he chooses to claim the exemption, or it is ground of challenge, and nothing more.

4. And the fact that an alien was accepted as a juror without the parties having a knowledge of his alienage, even in a capital case, will not vitiate the verdict; parties should ascertain, by proper examination, the competency of jurors, and if they neglect to do so, the verdict will not be disturbed on account of an alleged incompetency of the character mentioned.

5. FORMER DECISIONS—*and, herein, whether any different rule applies to the various statutory grounds of exemption or challenge.* In *Guykowski's* case, 1 Scam. 476, which was a capital case, it was *held*, that alienage in a juror was a positive disqualification, not a mere ground of exemption or of challenge.

In *Greenup* v. *Stoker*, 3 Gilm. 202, that rule is limited to capital cases. In *Davis'* case, 19 Ill. 74, it was *held*, over-age in a juror was not a disqualification, but an exemption. It is now considered that age and alienage are in the same category—that neither is a disqualification, but merely a ground of exemption or of challenge, and this rule applies even in a capital case.

6. INSANITY *as a defense in criminal cases—burden of proof as to sanity— the rule in the Hopps case, explained.* Sanity is an ingredient in crime as essential as the overt act, but the prosecution is not held to the proof of the sanity of the accused in any case. If, however, the accused relies upon insanity as a defense, and introduces evidence tending to establish that condition of mind, and the jury, in considering the evidence, entertain a reasonable doubt of his sanity, he is entitled to the benefit of that doubt, and cannot be convicted. This is the rule intended to be laid down in the case of *Hopps* v. *The People*, 31 Ill. 385.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. SIDNEY W. HARRIS, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. McROBERTS & GARNSEY, for the plaintiff in error.

Mr. C. BLANCHARD, State's Attorney, for the people.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an indictment in the Circuit Court of Will county against George Chase for murder. The homicide was charged to have been committed on the eighteenth day of April, 1864, on one Joseph Clark.

It appeared in evidence that, at the time of the killing, Clark was deputy warden in the penitentiary, and Taylor, one of the guard, went to the hall adjacent to the kitchen in the prison, and took therefrom four convicts, of whom the prisoner was one, and locked them in the cell house. The deceased then unlocked a cupboard containing hand-cuffs, the guard took a pair, and went to the cell door where the prisoner was, and told the prisoner deceased wanted to see him. The prisoner stepped out and asked to see the chaplain, when deceased replied, the chaplain was not there. The prisoner then threw

a stone which struck deceased on the left side of his head. The deceased had a revolver. The prisoner clenched deceased, who threw his pistol from him, calling to the guard to get it. The prisoner got the revolver first, and shot at deceased. He fired it five times. Deceased then got the pistol and placing it at prisoner's head, fired. Prisoner threw up his arms, exclaiming "you've murdered me." The guard then handcuffed him.

It was the duty of deceased to attend to the police of the prison.

From this wound on the head, caused by the stone, Clark died on the first day of May, following. His skull was fractured. The stone with which he was hit would weigh about one pound.

There was an attempt to prove the prisoner insane.

The evidence being closed, the counsel for the prisoner asked this instruction :

" The people must, in order to show that the accused was a convict at the time of the occurrence, produce the record of conviction, and that the conviction cannot be established by parol evidence."

This instruction was refused and exception taken.

The jury found the prisoner guilty as charged, whereupon a motion for a new trial was entered for reasons filed, which the court refused.

The record is brought here by writ of error, and the following errors are assigned : 1. The court erred in refusing the instruction asked. 2. In refusing a new trial because of the disqualification of the juror, Francis Nicholson, he being over the age of sixty years. 3. Because Allen A. Angel, one of the jurors, left the jury box and conversed with persons inside and outside of the court-house without the leave of the court, and not being in the charge of an officer.

The last error assigned was abandoned on the argument, and reliance mainly placed on the second, that of the supposed disqualification of the juror.

In support of the instruction, the refusal of which is the error first assigned, counsel for the prisoner do not seem to be

impressed by the fact, that the deceased was not exercising or attempting to exercise "prison discipline" over the prisoner. When informed by deceased, that the chaplain was not there, he was struck by the stone which, fracturing the skull, caused his death. The question on the indictment for this homicide, was not, the legal confinement of the prisoner in the penitentiary, but it was, did the stone thrown by the prisoner cause the death, and was the act done feloniously, willfully, and with malice aforethought?

We are at a loss to perceive in what respect the fact of the prisoner being a convict could bear on the charge in the indictment. It is undoubtedly true, as urged by his counsel, had his conviction been in question, it could not be established by parol. His presence in the penitentiary, and under the control of its officers, was a fact to be established as any other like fact, and the presumption would obtain that he was there as a convict. The issue was not as to the legality of his conviction, but it was, did he do the homicide charged, and under what circumstances? These circumstances are open to the usual parol proof, and they were shown to have been that the prisoner was occupying a cell in the penitentiary, that the deceased was an officer therein charged with its police, and that being present there, without having interfered in any manner with the prisoner he was murderously assaulted and wounded by him, and from which wound he died. In no aspect in which we can regard the case, was the legality of the confinement of the prisoner in the penitentiary a feature in it. The instruction on this head was properly refused.

The objection chiefly relied on by the prisoner's counsel, is that relating to the supposed disqualification of Nicholson, one of the jurors.

It appears Nicholson was an alien, which fact was unknown to the prisoner at the time the juror was sworn on the panel.

It is insisted that alienage is a positive disqualification, and the verdict therefore a nullity.

This is an important question, and one which we have fully considered in the light of all the authorities bearing on it.

Section one of chapter fifty-eight provides, that " all free white male taxable inhabitants in any of the counties of this State, being natural born citizens of the United States, or naturalized according to the Constitution and laws of the United States, and of this State, between the ages of twenty-one and sixty years, not being judges of the Supreme or Circuit Court, county commissioners, judges of probate, clerks of the Circuit or County Commissioners' Court, sheriffs, coroners, postmasters, licensed attorneys, overseers of the highways, or occupiers of mills, fences, toll-bridges or turnpike roads, being of sound mind and discretion, and not subject to any bodily infirmity amounting to a disability, shall be considered and deemed competent persons (except in cases where legal disabilities may be imposed for the commission of some criminal offense,) to serve on all grand and petit juries in and for the bodies of their counties respectively." (Scates' Comp. 679.) It was held by this court, in the case of *Guykowski* v. *The People*, 1 Scam. 476, that under this statute, an alien was not qualified to serve as a juror in any case, that alienage was not a mere personal exemption from jury service which an individual might claim, but an entire exclusion from such service, in short, that an alien was not capable, in law, of discharging the functions of a juror (p. 481).

In the case of *Greenup* v. *Stoker*, 3 Gilm. 202, the decision in Guykowski's case was reviewed by this court, and the court " reluctantly concluded that it was not indispensable to hold that it was not law," but felt called upon by a sense of justice and propriety, to limit the rule to capital cases (p. 221).

The decision in Guykowski's case, was placed upon the ground, that, in a capital case, the accused stands on all his rights, and waives nothing which is irregular (p. 481).

As explained in the case of *The People* v. *Scates*, 3 Scam. 351; this means nothing more than that a prisoner, in a capital case, is not to be presumed to waive any of his rights, but he may, by express consent, admit them all away.

In *Davis* v. *The People*, 19 Ill. 74, it was held, that being over sixty years of age did not render a juror incompetent, and this was a capital case. The fact that the juror was over sixty

years of age, was known to the prisoner when the juror was sworn, and he was accepted by the prisoner. This court said, age was not a disqualification, but an exemption.

The statute, as we read it, imposes the duty on all the taxable inhabitants of a county to serve on juries, excepting only aliens, minors, persons over sixty years of age, judges and others particularly specified in the act. These persons cannot be compelled to serve on juries : when summoned for that purpose, they, and each of them, can claim they are excused by law from the service, and no person can compel them to serve. This is the doctrine of Davis' case, and it seems to us the most reasonable. It is admitted by the counsel for the prisoner that age and alienage are in the same category ; this being so, the age of sixty years not operating as a disqualification, so neither can alienage. It is said, however, that the defendant in that case knew of the disqualification, and accepted the juror with that knowledge. But such knowledge could not alter the case. The juror was disqualified by age, or he was not disqualified. The knowledge of the fact did not render him a competent juror, if the view of the prisoner's counsel is correct. In the case before us, this knowledge might have been obtained by the prisoner, by the exercise of reasonable and proper diligence, which it was his duty to have exercised. In such a population as ours, made up of people of all nationalities, and who are taxable, it is to be expected the County Court, in selecting the jurors from the list of taxable inhabitants, will put upon it aliens, persons not naturalized, and if they do not claim their exemption we see no reason why they should not serve as jurors. So with those under or over age. Their names are on the list of taxable inhabitants from whom the jurors must be selected. *Prima facie*, they are qualified jurors. If not so, the fact can be ascertained before they are sworn, and if they do not excuse themselves, then we think it would be ground of challenge, and nothing more. We think it is going too far to say that a verdict rendered by a jury, one or more members of which could not be compelled, by law, to serve as jurors, is null and void. Such is the doctrine of

Guykowski's case, and it has not been satisfactory to the profession. The better doctrine, in our judgment, is, that if, upon examination of a juror called to be sworn, it shall appear he is an alien, or over age, or otherwise exempt, either party may challenge him for cause. Failing to do that, a verdict rendered by him should not be considered a nullity.

It is the duty of parties to ascertain, by proper examination, the competency of jurors. If this be neglected, the verdict ought not to be disturbed on account of an alleged incompetency of the character we are considering.

An attempt was made in this case, to excuse the prisoner on the plea of insanity, but the proof on that point was wholly insufficient to raise a well founded doubt in the minds of the jury.

We have before, in the case of *Hopps* v. *The People,* 31 Ill. 385, given our views somewhat at length on this defense, which seem not to have been clearly understood, for the reason perhaps, they were not clearly expressed. What we designed to say in that case, was simply this, that sanity is an ingredient in crime as essential as the overt act, and if sanity is wanting there can be no crime, and if the jury entertain a reasonable doubt on the question of sanity, the prisoner is entitled to the benefit of the doubt. We wish to be understood as saying, as in that case, that the burden of proof is on the prosecution to prove guilt beyond a reasonable doubt, whatever the defense may be. If insanity is relied on and evidence given tending to establish that unfortunate condition of mind, and a reasonable, well founded doubt is thereby raised of the sanity of the accused, every principle of justice and humanity demand that the accused shall have the benefit of the doubt.

We do not desire to be understood as holding the prosecution to the proof of sanity in any case, but we do hold, where evidence of insanity has been introduced by the accused, and a reasonable doubt of his sanity is thereby created, the accused cannot be convicted of the crime charged. We deemed it necessary to say this much in explanation of the ruling in the

case of Hopps, as some expressions used therein may have a tendency to mislead.

In this record we perceive no error, and must therefore affirm the judgment of the Circuit Court.

*Judgment affirmed.*