## ANDERSON *v.* TERRITORY.

*(Supreme Court of New Mexico.* January 28, 1887.)

**1.** HOMICIDE—WHAT CONSTITUTES MURDER—SUFFICIENCY OF EVIDENCE.

Where, on the trial of an indictment for murder, the evidence conclusively shows that the defendant tried repeatedly, between 11 and 12 o'clock of the day of the shooting, to get a pistol, with the avowed purpose of killing deceased; that he made repeated threats to that effect; that deceased was indisposed and lying on a bunk in the room where he slept, with several of his fellow-workmen present, and defendant went to the window of the room about 1 o'clock in the afternoon, thrust his arm through the open window, and fired five shots at deceased with a revolver; that one of the shots penetrated the walls of the abdomen, perforated the intestines, and caused the death of deceased some days afterwards,—the evidence is sufficient to warrant a verdict of murder in the first degree, there being no legal provocation for the act.

**2.** SAME—THREATS OF DECEASED—ILL FEELING BETWEEN HIM AND PRISONER.

The fact that ill feeling existed between one charged with murder and the deceased, or that deceased had threatened accused's life, will not reduce the degree of guilt.

**3.** SAME—CHARGE—"HEAT OF PASSION"—NO EVIDENCE OF FACT.

An instruction that, if defendant killed deceased in the heat of passion, the offense would not be murder in the first degree, is properly refused, where there is no evidence of such facts in the case.

**4.** JURY—DEFECTIVE HEARING—FACT NOT SHOWN BY RECORD—PEREMPTORY CHALLENGE NOT EXHAUSTED.

A verdict of guilty of murder in the first degree will not be reversed because a person impaneled as a juror asked to be excused on account of defective hearing, and

was challenged on that ground, which challenge was overruled, nothing appearing in the record to show such defect except the juror's statement of the reason for asking to be excused, and the record not showing that the party objecting to him had exhausted his peremptory challenges, or that the juror was sworn and examined as to the extent of his deafness.

5. SAME—ALIENS AS JURORS—NOT CHALLENGED ON THAT GROUND.
    The fact that jurors impaneled for the trial of a murder case were aliens is not cause for reversal of the judgment. It is simply ground for challenge. The ruling is strengthened in this case by the fact that it appears that the party raising the objection knew the jurors to be aliens when they were impaneled, or had reasonable cause to suspect that they were.

6. CRIMINAL LAW—APPEAL—INSTRUCTIONS REFUSED COVERED BY CHARGE.
    When the court has fully instructed the jury on a point asked, no error is committed by refusing to give other instructions on request, differing only in phraseology, but not in substance from, instructions already given.

7. SAME—RULINGS ON EVIDENCE—SPECIFICATION OF ERRORS ON MOTION FOR NEW TRIAL.
    Where the accused complains of an alleged erroneous decision of the court trying the cause, either in the exclusion or admission of evidence, he must point out in his motion for a new trial, with reasonable certainty, the particular evidence admitted or excluded; otherwise, the trial court need not, and the appellate court will not, consider such alleged erroneous decision.

8. SAME—CONTINUANCE—ABSENCE OF WITNESSES—DUE DILIGENCE OF SEARCH—COMP. LAWS N. M. § 2049, CL. 2.
    Under clause 2, § 2049, Comp. Laws N. M., requiring that "efforts constituting due diligence, which have been used to obtain a witness or his testimony, shall be shown" before a continuance will be granted for lack of the witness, a motion for the continuance of a trial of an indictment for murder made on behalf of the defendant, on the ground of the absence of material witnesses, is properly overruled when the affidavits of defendant's brother and attorney, on which the motion is based, do not show the date of issuing subpœnas for the witnesses, nor when their absence from the county was discovered, nor the acts which constituted the alleged diligence in searching for them.

Appeal from district court, Socorro county.

Indictment for murder.

*Wm. Breeden,* Atty. Gen., for the Territory.  *John S. Sniffen,* for appellant.

LONG, C. J.  The defendant in the court below, who is appellant here, was indicted for murder in the first degree and upon that charge tried, found guilty, and sentenced to death. After indictment and before trial, to-wit, March 22, A. D. 1886, at the regular March term of the district court, sitting in the said county of Socorro, the defendant was furnished with a list of all the regular jurors and of the talesmen for said term of court, and was placed on his trial on the twenty-fourth day of said month. The evidence is in the record, and conclusively proves a case of willful, deliberate, and premeditated murder, without a shadow even of excuse or justification. It is established that the defendant and the deceased, Alfonso Williams, were part of a lot of hands working at a rock quarry in Socorro county; that about 11 o'clock, or between that hour and 12, on the day of the shooting, the defendant repeatedly tried to get a pistol, offering $25 for one, with the avowed purpose to kill the deceased, and that he made repeated threats to that effect. The deceased was indisposed, and lying on a bunk in the room of the house where he slept, with several of the work-hands present. The defendant came to the window of the room where deceased was at the time, about 1 o'clock in the afternoon, and thrust his arm through an open window, and began firing upon deceased as he was lying upon the bunk. The firing was continued with a revolver until five shots were discharged, and the deceased mortally wounded. One shot penetrated the walls of the abdomen, perforated the intestines, and thereby caused the death of the deceased some days after the shooting. Nothing occurred as any just legal provocation to the act, or to cause hot blood. It was a cold-blooded murder, in open day, in the presence of witnesses.

The defendant assigns and presents to this court, as grounds for reversing the judgment of the court below, 10 reasons, as follows: *First*, the refusal of the court to grant defendant a continuance; *second*, alleged error in forcing the defendant to trial without the witnesses for whose evidence a continuance was asked; *third*, the refusal of the court to give certain instructions asked by the defendant; *fourth*, giving by the court of certain instructions; *fifth*, in omitting to instruct the jury that, if defendant took deceased's life in the heat of passion, it would not be murder in the first degree; *sixth*, in permitting T. H. Yerger to act as a juror, while being of defective hearing; *seventh*, because the verdict is against the weight of the evidence; *eighth*, because there is no evidence to support the verdict; *ninth*, because of the rejection of relevant evidence offered by defendant; *tenth*, because of alleged error, "in not granting defendant a new trial on the ground that two of the jurors who sat on said trial were not citizens of the United States and qualified jurors." The defendant presented to the court before trial an affidavit for continuance, and thereon moved to continue the cause, which motion was overruled; and this action of the court constitutes the alleged error, included within the first and second assignments. So much of the affidavit for continuance as is material to the contention is as follows: "*Third*. That subpœnas were duly issued in said cause by this court, on the ——— day of March, 1886, and placed in the hands of Charles T. Russell, sheriff of Socorro county, for service on the said witnesses. *Fourth*. That the said subpœnas required the said witnesses to be present in court at this March term, to testify for the defendant in said cause; but the said witnesses were not served, on account that the residence or whereabouts of the said witnesses could not be found; that affiant has made diligent search and inquiry, and has written several letters to Topeka, Kansas, and to Valley Falls, Kansas, where the said witnesses were reported to be; but said witnesses were not there; and not until within the last ten days has this affiant learned that one of the said witnesses' (Ben Heines') whereabouts has been ascertained, which is about forty miles from Valley Falls, Kansas. It was reported to this affiant, and he had reason to believe, that the said witnesses were in Socorro county, and therefore the affiant had aforesaid subpœnas issued for them." This is the affidavit of Mr. Sniffen, while that of J. M. Anderson, a brother of the defendant, relating to the material question here involved is in these words: "That affiant has, within the past few days, ascertained the whereabouts of said Sam Steele and Ben Heines; that the said Sam Steele was then in the city of Topeka, Kansas, and the said Ben Heines was at Turner Station, Kansas." The indictment was returned into court on the nineteenth day of November, 1885, and charges that the murder was committed on the twenty-first day of June of the same year. The defendant was arrested the day of the killing, the time charged in the indictment. The affidavit for continuance was filed in the court on the twenty-third day of March, 1886. The day when the subpœnas for the two witnesses, Steele and Heines, were issued by the clerk and placed in the hands of the sheriff is left blank, as appears above, the date not being filled in, so it is impossible to determine how long before the motion for continuance was made the subpœna was issued. A careful examination of the record and also of appellant's brief has been made for something to supply this omission, and to ascertain the time when such writ was issued; but that fact is nowhere disclosed. It is true that it is stated in the affidavit of John S. Sniffen that "it was reported to this affiant, and he had reason to believe, that said witnesses were in Socorro county;" but when it was so reported, whether the day or a month before, the affidavit does not disclose. It is also stated in the affidavit "that affiant has made diligent search and inquiry, and has written several letters to Topeka and Valley Falls, Kansas." Of whom did he make inquiry,—of those likely to know the whereabouts of the witnesses, or of strangers, having no probable knowledge on that subject? When did he

make inquiry,—the day before, or a week or month earlier? When and to whom were the letters written, and to whom directed,—the parties themselves, their friends, or to strangers? On all these points the affidavit is vague and indefinite. The affidavit of Sniffen further states: "Within the last ten days this affiant has learned that Ben Heines, one of said witnesses, is about forty miles from Valley Falls, Kansas." So far as appears by this averment, the information was obtained only the day before the affidavit was made, as that was within 10 days. It is said in the affidavit that the witnesses were not served because they could not be found. Whether they could be found or not was a matter depending on the diligence exercised by the defendant, and the law imposed the duty upon him to show his acts done, if any, in trying to find the witnesses, so the court looking at them might determine whether they amounted to legal diligence. As applicable to this point, the following legislative enactments should be considered: "Sec. 2048. A continuance shall not be granted for any cause growing out of the fault or negligence of the party applying therefor." "Sec. 2049, [second clause.] Efforts constituting due diligence, which have been used to obtain such witness or his testimony, shall be shown." Under this statute, if the defendant was negligent in his effort to procure the witnesses, he could have no continuance on the ground of their absence. It is especially notable that the defendant filed no affidavit at all. His brother and Sniffen filed written statements under oath, and that constituted the whole of the showing. The prisoner, on such application, must establish diligence affirmatively. He may in this case at all times have known of the whereabouts of the witnesses, and neglected to either communicate such fact to his counsel, or to have a subpoena issue for them. Nothing to the contrary is shown. Twelve days before the trial the absent witnesses may have been in the very town of Socorro, within defendant's knowledge, and yet the showing may be true. The court was right in refusing to continue the cause, for the reason that no diligence was shown by the defendant to procure the attendance of his witnesses. This view of the question disposes of the first and second objections made by the prisoner.

Did the court commit error in refusing to read to the jury instructions asked by the defendant? The first and second of such instructions related to reasonable doubts, and were fully embraced within the third and fifth of those given by the court on its own motion. It is well-settled law that, when the court has fully instructed the jury on a point asked, no error is committed by refusing to give others, on request, differing only in phraseology, but not in substance, from instructions already given. "It is not error to refuse to give instructions asked for, even if correct, in point of law, provided those given cover the entire case." *Laber* v. *Cooper*, 7 Wall. 566; *Indianapolis & St. L. R. Co.* v. *Horst*, 93 U. S. 291; Thomp. Char. Jur. § 92. In the last authority cited a large number of cases are collected fully sustaining the text. Indeed, the rule is familiar and well settled. The alleged error about which complaint is made, upon the instructions given by the court and in refusing those asked, can be more intelligently understood by a consideration of their terms, and so they are set out in full. Those given by the court are as follows:

### "*The Territory* vs. *Henry Anderson.*

#### "MURDER, FIRST DEGREE.

"The defendant is charged with the crime of murder in the first degree, by having on the twenty-first day of June, 1885, at the county of Socorro, territory of New Mexico, unlawfully, feloniously, willfully, and of his malice aforethought, and from a premeditated design to effect the death of Alfonso Williams, otherwise called and known as Bill Williams, shot and killed said Williams.

"'Unlawfully' means contrary to law. 'Feloniously' is a technical word used in indictments charging offenses punishable by death or imprisonment

in the penitentiary. 'Willfully' means that the act charged was intentionally done, and was not the result of accident or misfortune. 'Malice' is a condition of the mind and heart void of social duty, and fatally bent on mischief. 'Malice aforethought' means that the act done was thought of before its commission, any length of time, however short, in malice. 'A premeditated design to effect the death,' means that there was a design to kill the deceased fully formed in the mind of the slayer before the killing was done, and that such design had been thought over and meditated upon before the fatal act was committed, any length of time, no matter how short. The law fixes no time in which a design to kill may be formed. It may be the conception of a moment, as well as the plan of hours.

"And if you believe from the evidence that the defendant did, in Socorro county, territory of New Mexico, on the twenty-first day of June, 1885, or at any other time within ten years next before the finding of the indictment, unlawfully, feloniously, willfully, of his malice aforethought, and from a premeditated design to effect the death of deceased, (as the terms have been defined,) shoot and kill said deceased, you will find him guilty of murder in the first degree, and simply so state in your verdict.

"(1) Although you may believe from the evidence that the defendant shot and killed deceased, yet, if you further believe from the evidence that at the time of the killing of deceased by defendant the deceased was attempting to kill the defendant, or to do him some great bodily harm, or that the defendant had reasonable grounds to apprehend, and did apprehend, that the deceased was then and there about to kill the defendant, or to do him some great bodily harm, and that the defendant had reasonable cause to believe, and did believe, that the danger of death or great bodily harm being inflicted upon him by deceased was then and there imminent and impending, and that defendant had reasonable cause to believe, and did believe, that it was necessary for him to shoot and kill defendant in order to avoid such impending danger to himself, you will find the defendant not guilty.

"(2) If you believe from the evidence that the defendant sought for, attacked, and killed deceased, and if you further believe from the evidence that at said time the deceased made no effort to kill defendant, or to do him personal injury, and made no demonstration hostile to defendant, then it is no excuse or justification for such killing that deceased and defendant had a quarrel a short time before, and deceased then attempted to shoot defendant.

"(3) The law presumes the defendant to be innocent of the crime charged against him, and this presumption continues with him throughout the case, until it is overcome by proof of his guilt by the evidence, beyond a reasonable doubt; and unless his guilt has been so proven, you will find him not guilty.

"(4) You are the sole judges of the weight of the evidence and the credibility of the witnesses; and if you believe from the evidence that any witness has willfully sworn falsely as to any material fact in this case, you are at liberty to disregard the whole or any part of the testimony of such witness; and in considering the credibility of any witness, or the weight to be given to such testimony, you may take into consideration the manner and conduct of such witness upon the witness stand, his relation to the parties, his manner of knowledge, and the interest he may have in the result of this case.

"(5) If you have a reasonable doubt of the defendant's guilt, you should acquit him; but a doubt to authorize an acquittal on that ground should be a substantial doubt touching defendant's guilt, based upon all the evidence, facts, and circumstances in evidence in this case, and not a mere possibility of his innocence."

Instructions offered by defendant, and refused:

"(1) If the jury have in their own minds, as gathered from the evidence, any cause for a reasonable or substantial doubt of the innocence or guilt of the defendant, the defendant must be acquitted.

"(2) In order to convict the defendant of the crime charged, the jury must be satisfied beyond a reasonable doubt, and substantial doubt, that the death of the deceased was caused by the pistol shot in the hands of Henry Anderson, and not from disease, or any other cause.

"(3) If you find from the evidence that there was ill feeling existing between the defendant and the deceased, and that the deceased had made threats against the life of the defendant, the defendant is not guilty of murder in the first degree.

"(4) If you have reason to believe from the evidence that the defendant took the life of the deceased in order to save his own life, or under a reasonable belief that it was necessary, and that the deceased had drawn a pistol on the defendant, and threatened him that he would take his life, and under such fear and danger from the threats so made the defendant took the life of the deceased, it would not be murder in the first degree.

"Respectfully submitted to the court by

"JOHN S. SNIFFEN,

"Atty. for Defendant."

Referring to the third one asked by the defendant and refused by the court, it often occurs that ill feeling between the deceased and the prisoner creates the purpose to kill, and is the productive source of many premeditated murders. Ill feeling may be engendered, and the determination to take life result therefrom, and this intent to take life may be thought over in advance; but it would not reduce the degree of guilt because the murder was caused by a former grudge or ill feeling. Neither can the mere fact of previous threats alone mitigate the offense. The instruction is not an accurate statement of the law, and was properly refused. The fourth instruction is open to objection. It is not a clear statement of the legal principle involved, but which is more correctly given by the court in its instruction numbered 1. No specific objection is pointed out to the one numbered 2, as given by the court, and none is perceived. It is also objected that the court did not instruct the jury that, if the defendant took the life of the deceased in the heat of passion, the offense would not be murder in the first degree. There is no evidence in the case to either require or justify such an instruction.

The sixth error assigned is: "The court erred in permitting T. H. Yerger to act as a juror while laboring under a physical disability, (defect in hearing.)" It appears on page 31 of the transcript that one Yerger asked of the court to be excused on account of defect of hearing, but his request was refused. He was then challenged for cause by defendant, and the challenge overruled. A careful examination of the record does not disclose anything further relating to the defect complained of. It does not appear that he was sworn and examined respecting his hearing, or that, on his oath or otherwise, except so far as it might be implied from his request, that he stated his hearing to be deficient. The extent of the defect, whether so slight as to be really of no consequence, or more extended, does not appear. So far as can be ascertained from the record, there was no such defect as the one complained of. Before action can be taken here, predicated on such an objection, the record must disclose that it was in some way shown to the court that the juror was in fact of defective hearing. The record does not disclose that defendant exhausted his peremptory challenges, and therefore, in any event, he was not harmed by the ruling of the court. The presumption is in favor of the regularity of judicial action, and not against such regularity. It not being made to appear that the juror was incapacitated in any degree by the infirmity mentioned from discharging his duty, the court committed no error in disregarding his request to be excused, or in refusing to excuse him for cause. It is within the knowledge of every judge of long experience that such excuses are often presented for the mere purpose of relief from jury service.

The seventh and eighth errors relate to the weight of evidence, and have been determined by the views heretofore stated on that subject.

"*Ninth*. The court rejected competent, relevant, and legal testimony offered by the defendant." By reference to the Pamphlet Laws of 1851, p. 141, the following will be found: "An act regulating the practice in the district and supreme courts of the territory of New Mexico." This act contains section 46, which is in these words: "Motions for new trial and in arrest of judgment shall be entertained." The title and the section quoted are sufficiently general to apply to both civil and criminal causes. The same section is carried into the Compiled Laws of 1884. The title of the act is not, however, there given, and reference must be made to the original enactment to ascertain whether in terms such act was limited to a particular class of cases. This section applies to criminal causes, and motions for new trial should therefore be made, presenting to the court the several grounds of objection occurring during the trial. Properly regarding the motion for new trial as a necessary step, the defendant filed one in this cause, but omitted therefrom the point now under consideration, so that no reference whatever is made therein to the ruling of the court on the exclusion of the evidence here objected to. The purpose of a motion for new trial is to bring before the court, for more careful consideration than can be given on the trial, points of objection, and thereby afford opportunity for correction of erroneous rulings. The correct practice on this point is thus stated in *Grant* v. *Westfall*, 57 Ind. 126: "It has repeatedly been held by this court that where a party complains of an alleged erroneous decision of the court trying the cause, either in the exclusion or admission of evidence, he must point out in his motion for a new trial, with reasonable certainty, the particular evidence admitted or excluded; otherwise, the court below need not, and this court will not, consider such alleged erroneous decision." To the same effect are *Reeves* v. *Plough*, 41 Ind. 204; *Betson* v. *State*, 47 Ind. 54; *Bowers* v. *Bowers*, 53 Ind. 430. In this case the point was not made before the court below, on motion for new trial, and so cannot be considered here.

The tenth error assigned is on the ground that the court allowed two jurors who were not citizens of the United States to sit as jurors during the trial of the cause. No objection was made on this point when the jury was being impaneled; but it was raised for the first time on the motion for new trial. It is necessary to consider whether the fact that the jurors were not citizens constituted an absolute disqualification, or was only ground for challenge. "In those jurisdictions where alienage is a disqualification, [which it is at common law,] the objection is good, if made by challenge." Whart. Crim. Prac. § 669. "At common law it is undoubtedly well settled that alienage constitutes good ground for challenge." *Schumaker* v. *State*, 5 Wis. 328. "The prisoner, besides his peremptory challenges, may also challenge for cause. Thus he may challenge a juror because he is an alien." 1 Arch. Crim. Prac. top page 544. "Alienage. That the juror is an alien is a good cause of challenge at common law." 1 Bish. Crim. Proc. § 784. Section 580 of the Compiled Laws reads thus: "All male persons over twenty-one and under sixty years of age, who shall have resided six months in the county next preceding the term of court, * * * and who shall be citizens of the United States, * * * shall be liable to be chosen and to serve as grand and petit jurors." This section does not change the rule settled by the foregoing authorities.

In *King* v. *Sutton*, 15 E. C. L. 208, a statute similar in terms with ours was before the court. Lord TENTERDEN, in giving the opinion in that case, said: "The enactment in the twenty-seventh section of this statute agrees precisely with that which before had been established by the common law; for, in Co. Lit. 156b, it is stated that aliens born may be challenged. Now, I am not aware that a new trial has ever been granted on the ground that a juror was

liable to be challenged, if the party had an opportunity to make his challenge."

In *Chase* v. *People*, 40 Ill. 352, the former decisions of the court in Illinois on this question are reviewed, under a statute the same in principle and almost identical in terms with ours. Nicholson, a juror, was an alien, and that fact was unknown to the defendant until after his conviction. It was urged in the supreme court that the verdict was a nullity. The court say: "In this case that knowledge [of his alienage] might have been obtained by the prisoner by the exercise of reasonable and proper diligence, which it was his duty to have exercised. In such a population as ours, made up of people of all nationalities, and who are taxable, it is to be expected the county court, in selecting the jurors, * * * will put upon it aliens, persons not naturalized, and if they do not claim their exemption, we see no reason why they should not serve as jurors. *Prima facie* they are qualified jurors. If not so, the fact can be ascertained before they are sworn; and if they do not excuse themselves, it will be ground of challenge, and nothing more. It is going too far to say that a verdict rendered by a jury, one or more members of which could not be compelled by law to serve, is null and void. * * * The better doctrine is if, upon examination of a juror called to be sworn, it shall appear he is an alien, or over age, or otherwise exempt, either party may challenge him for cause. Failing to do that, a verdict rendered by him should not be considered a nullity. It is the duty of parties to ascertain by a proper examination the competency of the jurors. If this be neglected, the verdict ought not to be disturbed on account of an alleged incompetency of the character we are considering."

These observations are quite applicable to the condition in this territory. The population here, composed of the original inhabitants at the time of the annexation and their descendants, with people from almost every foreign country, renders it very probable that persons of foreign birth, not naturalized, may be called upon the jury. They may, and generally do, possess all the mental and moral qualifications for acceptable jurors, and no reason can be perceived why, if parties litigant are willing to permit such persons to serve, the verdicts in which they join should be held void. To so hold would be to introduce into our practice a rule rendering verdicts of doubtful certainty, and which would often aid the guilty to delay or wholly avoid just punishment for their crimes. The better rule, and the one here held, is that alienage is only ground for challenge, and a verdict returned by a jury composed in part of an alien or aliens is not void. The disqualification is one which the litigant may, by his act or neglect, waive, and should be treated as other disqualifications constituting grounds of challenge. "The defendant, by omitting to examine the jurymen as to bias, ordinarily is precluded from afterwards taking exception." Whart. Crim. Prac. § 844; *Yanez* v. *State*, 6 Tex. App. 429. "A new trial will not be granted on the ground that a juror was liable to be challenged, if the party had an opportunity of making his challenge, and knew, or might have known, in the exercise of due care, the facts beforehand." Whart. Crim. Prac. § 845. *McAllister* v. *State*, 17 Ala. 434; *George* v. *State*, 39 Miss. 570; *Com.* v. *Jones*, 1 Leigh, 598; *Presbury* v. *Com.*, 9 Dana, 203; *State* v. *Taylor*, 64 Mo. 358; *Kingen* v. *State*, 46 Ind. 133; *Gillooley* v. *State*, 58 Ind. 183; *Patterson* v. *State*, 70 Ind. 343; *Croy* v. *State*, 32 Ind. 384. The Indiana cases are much like the one under consideration.

In *Croy* v. *State, supra*, the defendant failed to interrogate a juror in respect to his being a householder of the county, under a statute requiring him to have that qualification, and the objection was held to be thereby waived.

In 70 Ind., *supra*, the charge was murder. A statute of Indiana required jurors to be voters of the county in which the trial was held. The objection

after trial was that one of the jurors was not a voter of the county. The court say: "The appellant had full opportunity, by reasonable diligence, to ascertain the fact before the jury was sworn to try the case. The fact whether a juror is a voter of the county where he resides or not is easily ascertained, and the public law informs every person that being a voter is one of the necessary qualifications of a juror. It is not a fact hidden in the breast of the juror, or concealed in the mind of any one, and which cannot be known until divulged. It is necessary, therefore, that whoever urges the objection that the juror is not a voter, must show that he has used diligence to ascertain the fact before the trial, or the objection must be held to be waived."

The views thus expressed are pertinent here. Whether the jurors Godfrey Radcliff and George H. Thwaits were or not citizens of the United States when sworn was a matter easily determined. The terms of the statute carried to the defendant knowledge that, if these jurors were not citizens, they could be challenged, and for that cause set aside. The record does not show affirmatively that either of the jurors upon their preliminary examination were asked a single question by the defendant. It only appears, as matter of inference from an affidavit filed by the territory, that the question of the jurors'· citizenship was, in the most remote manner even, the subject of inquiry. The full extent of the affirmative showing on the point, as disclosed in the record,. is to the effect that neither the defendant nor his attorney knew that these jurors were not citizens. It does not appear they made any effort to ascertain that fact. It is, on the other hand, apparent that defendant's counsel, while the jury was being impaneled, had in mind that he could neglect to make full inquiry, and, if the cause resulted unfavorably to the prisoner, take advantage of his own omission to inquire, and in that way secure a retrial. If such a practice were tolerated, it would operate unjustly. Chilion Riley swears, when Thwaits was called into the jury-box, he heard the defendant's attorney say about the juror, "I bet he is not naturalized." This statement is not denied, and it proves the defendant's counsel right then had the very objection of which complaint is now made in mind. He also had opportunity to ascertain the fact whether the juror was not naturalized. Thwaits swears that, in a conversation with the defendant's counsel after the trial, he said to Thwaits. that, before the trial, some one told him (the counsel) that Thwaits had not. taken out his final papers; and then Thwaits asked the counsel why he did not interrogate on that point before the jury was sworn, and the counsel answered: "*I did not want to find it out then.*" The act and information of the defendant's attorney on this point, under such circumstances, was the act and information of the prisoner. Having the matter thus directly before him, the defendant willfully turned away from knowledge immediately accessible to him, clearly expecting to use information of which he purposely refused to possess himself to work a new trial. A very slight inquiry of the juror on his *voir dire* would have enabled the defendant to ascertain whether he was a citizen. It does not appear by the record that the defendant made a single inquiry of the juror Radcliff touching his qualifications. An inquiry of the juror as to where he was born would have determined whether naturalization was necessary to his citizenship. If, upon such interrogatory, the juror had made answer that he was born in a foreign country, three more questions at furthest would have demonstrated whether he was a citizen and a legally qualified juror. The opportunity for such examination was open to the defendant, and it was his duty to make it. By failing to do so he was negligent, and must be held to have waived the objection now presented here. Upon a careful consideration of the record in this cause we find no error. The judgment of the court below is affirmed.

I concur: HENDERSON, J.